**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: NELNET SERVICING, LLC
DATA SECURITY LITIGATION** | MDL NO. 3053 |

**INTERESTED PARTY RESPONSE OF PLAINTIFFS HEGARTY, SAYERS, AND
WILLIAMS TO PLAINTIFF SPEARMAN'S MOTION FOR TRANSFER OF ACTIONS
TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA
AND FOR CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

Jennifer Hegarty who is the Plaintiff in the action styled *Hegarty v. Nelnet Servicing, LLC*,

Case No. 4:22-cv-03186 (D. Neb.) (filed Sept. 2, 2022), and Mia Sayers and Kylee Williams who

are Plaintiffs in the action styled *Sayers et al v. Nelnet Servicing, LLC*, Case No. 4:22-cv-03203

(D. Neb.) (filed Sept. 14, 2022) (collectively, "Plaintiffs" or "Hegarty Plaintiffs"), respectfully

submit this response to the pending motion submitted pursuant to 28 U.S.C. § 1407 requesting

transfer and centralization of all actions that seek economic and equitable remedies due to the

recent data breach experienced by Nelnet.

As of this filing, and as the *Schedule of Actions*[1] demonstrates, there are twenty (20) actions

(the "Actions") pending in 3 districts across the country, with more cases likely to be filed.

Plaintiffs support the transfer and the centralization of all the Actions before the United States

Judicial Panel on Multidistrict Litigation (the "Panel" or "JPML").

Plaintiffs support venue for the multidistrict litigation to proceed in the United States

District Court for the District of Nebraska, where eighteen (18) of the twenty (20) actions have

been filed, including the first. The Nebraska actions are already pending and assigned to the

Honorable Judge John M. Gerrard for disposition and assigned to Magistrate Judge Cheryl R.

---

[1] See attached Exhibit "A."

Zwart for judicial supervision. There are only two actions not filed in Nebraska – one is filed in the United States District Court for the Eastern District of Tennessee and the other is filed in the United States District Court for the Central District of California.

However, in the event the Panel does not consolidate and transfer all the Actions to Nebraska, Plaintiffs respectfully request the Panel transfer and consolidate all pending and future related actions to the United States District Court for the Western District of Oklahoma for assignment to the Chief Judge Timothy DeGiusti.

## I.   <u>INTRODUCTION</u>

Nelnet Servicing, LLC, ("Nelnet") is a Nebraska based conglomerate that services $513.5 billion in student loans for 15.8 million borrowers. On August 26, 2022, it was publicly reported that Defendant Nelnet had experienced a massive data breach (the "Data Breach"). Those affected include individuals whose student loans are serviced by the Oklahoma Student Loan Authority ("OSLA") and Edfinancial Services, LLC ("Edfinancial").  Of the accounts serviced by OSLA, approximately 1,477 borrowers live in Oklahoma.[2] Nelnet has determined through a third-party investigation that the Data Breach compromised the names, addresses, email addresses, phone numbers, and Social Security numbers ("PII") of affected borrowers. It is estimated the Data Breach has impacted at least 2.5 million current and former student loan borrowers.

Since the Data Breach was announced on August 26, 2022, approximately twenty (20) putative class action lawsuits have been filed in federal courts across the nation. All of the lawsuits name Nelnet as a defendant. Only one lawsuit names both Edfinancial and Nelnet as defendants.[3]

---

[2] *See* News on 6, Millions Affected by Oklahoma Student Loan Authority Data Breach Leak, Sept. 2, 2022, https://www.newson6.com/story/630e8c16ac86df072656347a/millions-affected-by-oklahoma-student-loan-authority-data-breach-leak- (last visited Sept. 23, 2022).

[3] *Kohrell v. Nelnet Servicing, LLC and Edfinancial Services, LLC*. Case No 3:22-cv-00314 (E.D. Tenn.)

OSLA has yet to be named as a defendant in a lawsuit, but it is anticipated OSLA will be named as a defendant in a separate lawsuit to be filed in the United States District Court for the Western District of Oklahoma.[4]

The focus of the claims in each of the Actions is the Data Breach experienced by Nelnet in 2022. In all of the putative class actions filed, the named plaintiffs rely upon nearly identical facts and are generally seeking the same types of relief. All plaintiffs in the Actions claim Nelnet's failure to properly secure and safeguard the PII of borrowers resulted in the Data Breach that affected millions of borrowers. All the Actions filed also reference claims of negligence, violations of various consumer protection statutes, and/or violations of common law principles against Nelnet, arising from the Data Breach.

Centralization in a single federal court will hasten and facilitate a comprehensive remedy for individuals affected by the Data Breach. The similarity of the twenty (20) putative class actions makes centralization appropriate, and the best transferee forum for these actions is in the District of Nebraska. However, in the event Nebraska is found not to be the proper forum, or the Court in Nebraska either does not want or does not have the capacity to accept the MDL assignment, the United States District Court for the Western District of Oklahoma should be considered the second most appropriate venue for centralizing the Actions. The Western District of Oklahoma has many experienced and qualified jurists, including the Honorable Judge Timothy D. DeGiusti, who is experienced with both Data Breach cases and MDL proceedings.[5]

---

[4] *Hegarty v. Nelnet Servicing, LLC*, Case No. 4:22-cv-03186, Compl., fn. 1 (D. Neb.) (filed Sept. 2, 2022) ("A Notice of Claim has been submitted to OSLA, notifying it of a claim under the Oklahoma Government Tort Claims Act.").

[5] *See generally, United Food & Commer. Workers Union v. Chesapeake Energy Corp.*, No. 09-CIV-1114 (W.D. Okla.); *Courtright v. Bd. of County Comm'rs*, No. 08-CIV-230 (W.D. Okla.); *Blankenship v. Kwick Rentals*, Case No. 15-CIV-1057 (W.D. Okla.); *Guidry v. Chenega Integrated Sys., L.L.C.*, No. 07-CIV-378 (W.D. Okla.); *Northumberland Cty. Ret. Sys. Vv. GMX Res. Inc.*, No. 07-CIV-378 (W.D. Okla.); *Cooper v. Coil Chem LLC*, No. 16-CIV-473 (W.D. Okla.); *Chieftan*

## II.    **ARGUMENT**

All of the putative class action complaints filed since the August 26, 2022, Data Breach announcement address the same underlying actions and omissions. Coordination is necessary to avoid duplicative discovery, promote just and efficient conduct of these cases, and prevent inconsistent rulings.

### A.  **Transfer and Consolidation Pursuant to U.S.C. § 1407 is Appropriate.**

28 U.S.C. § 1407 authorizes the JPML to transfer actions sharing common questions of fact to a single district for coordinated or consolidated pretrial proceedings. Plaintiffs respectfully submit that, in this case, there is no question that centralization of the twenty (20) actions is appropriate. A detailed recitation of the well-known standard is not necessary, and Plaintiffs rely upon the Panel's familiarity with the governing legal principles.

### B.  **Transfer to the United States District Court for the District of Nebraska is Appropriate.**

The most appropriate venue for transferring and consolidating the Actions is the United States District Court for the District of Nebraska. Plaintiffs concur and support the Spearman Plaintiffs' motion filed herein on September 15, 2022, to the extent it requests consolidation and transfer of the Actions to

---

*Royalty Co. v. SM Energy Co.*, No. 11-CIV-177; *Saenz v. Erick Flowback Serv., LLC*, No. 14-CIV-593; *Reaching Souls Int'l, Inc. v. Sebelius*, No. 13-CIV-1092; *In re Samsung Top-Load Washing Mach. Mktg., Sales Practices and Prod. Liab. Litig.* MDL No. 17-ml-2792 (W.D. Okla.). This Panel has openly recognized Judge Degiusti's expertise and skill.  *In re Samsung Top-Load Washing Mach. Mktg., Sales Practices and Prod. Liab. Litig.* 278 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) ("Judge Timothy D. Degiusti, to whom we assign this litigation, is an experienced jurist, and we are confident he will steer this litigation on a prudent course.").

the United States District Court for the District of Nebraska for the same reasons the Spearman Plaintiffs have identified.

**C.   In the Event Transfer to the United States District Court for the District of Nebraska is denied, Transfer to the Western District of Oklahoma is Appropriate.**

Plaintiffs respectfully submit that in the event the Panel does not transfer the Actions to the District Court for the District of Nebraska, the Panel should transfer the Actions to the Western District of Oklahoma for centralized and expedient case management.

There are numerous factors which the Panel typically takes into consideration in determining the most appropriate transferee forum. Among those factors are (1) convenience of the parties; (2) location of witnesses and other evidence; (3) whether the district is in an accessible metropolitan location; (4) experience in management of class actions and complex litigation; (5) the caseload of the transferee district; and (6) the number of cases pending in the jurisdiction. *See, e.g.*, *In re Wheat Farmers Antitrust Class Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L.1973); *In re Preferential Drug Prod. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977); *In re Tri-State Crematory Litig.*, 206 F. Supp. 2d 1376, 1378 (J.P.M.L. 2002); *In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 293 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003); *In re Educ. Testing Serv. Prt 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004).

While there are other venues that might be appropriate, Plaintiffs propose that if the District of Nebraska is not chosen, the Western District of Oklahoma has demonstrated that it can ably manage this complex litigation, with correspondingly experienced jurists who can shepherd the pretrial proceedings in these consolidated cases. For example, transfer to the Western District of Oklahoma before the Honorable Judge Timothy J. DeGiusti is appropriate because Judge DeGiusti has significant experience presiding over complex civil litigation. Judge DeGiusti's courtroom is geographically central to the parties and is in a culturally rich metropolitan area that is easily

accessible. The Western District of Oklahoma provides the optimal forum, in the event the Actions are not transferred to Nebraska.

1. ***Factors 1 & 2: The Western District of Oklahoma is Convenient for All Parties and is Central to All Witnesses and Evidence.***

The members of the putative classes and the Defendants reside throughout the United States with a very large number in Oklahoma. As a result, a central location that is easily accessible to all parties is needed as the focal point of the litigation.

This Panel has previously favored centrally located transferee forums for multidistrict litigation. *See In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) (ordering transfer to the Eastern District of Louisiana because it "provides a geographically central forum for this nationwide litigation."). In fact, the Panel has recognized the Western District of Oklahoma's geographic location in selecting it as the transferee forum for other multidistrict litigation. *See In re TransData, Inc., Smart Meters Patent Litig.*, 830 F. Supp. 2d 1381, 1382 (J.P.M.L. 2011) ("We are persuaded that the Western District of Oklahoma is the most appropriate transferee district. It is near Texas, where many parties are located; is in a geographically central location for this nationwide litigation; and an action is already pending in that district.").

The Western District of Oklahoma is centrally located, providing comparable travel distances for all. The Defendants in these Actions hail from Nebraska, Oklahoma[6], and Tennessee. Nelnet is headquartered in Nebraska, Edfinancial is headquartered in Tennessee, and OSLA is headquartered in Oklahoma. The critical evidence in the Actions, including documents and witnesses, are likely to be found at the headquarters of each of the Defendants. Oklahoma is

---

[6] OSLA has yet to be named as a defendant in a lawsuit, but it is anticipated OSLA will be named as a defendant in a separate lawsuit to be filed in the United States District Court for the Western District of Oklahoma.

centrally located between Nebraska and Tennessee. Indeed, Nebraska and Tennessee are each situated only one state away from Oklahoma. The Western District of Oklahoma would provide the ideal middle meeting point for all Defendants. Additionally, the plaintiffs in the Actions are spread out across the United States. There is no question that Oklahoma is the center of the United States, making it the most convenient forum for all plaintiffs. Its central location makes the Western District of Oklahoma the most favorable forum for all parties.

**2. *Factor 3: the Western District of Oklahoma is an Accessible Metropolitan Area.***

Given that at least some of the parties and potential witnesses will be required to travel, regardless of where the Actions are transferred, the accessibility and availability of the metropolitan area are also significant considerations in selecting the appropriate forum. *See In re Enron Corp. Securities, Derivative & "ERISA" Litig.,* 196 F. Supp.2d 1375, 1376-77 (J.P.M.L. 2002) (transferring litigation to a district court "in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services."); *In re Laughlin Prod., inc. Patent Litig.,* 240 F. Supp.2d 1358, 1359 (J.P.M.L. 2003) (transferring to "an accessible metropolitan district"). The Western District of Oklahoma is situated in Oklahoma City, a major metropolitan area offering convenient travel and readily available accommodations. The City's largest airport offers travel via five major passenger airlines and nonstop service to twenty-one cities across the United States, including both coasts as well as northern and southern cities.[7] The city has numerous forms of ground

---

[7] *See* City of Oklahoma City, Airports, https://www.okc.gov/residents/airports (last visited Sept. 22, 2022).

transportation, including Uber[8], Lyft[9], and an extensive public transportation system.[10] Visitors can choose from a wide variety of hotel accommodations at affordable price points, including hotels near the courthouse and the airport.[11] This Panel has previously found this District to be an appropriate forum for multidistrict litigation due, in part, to its convenient location. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Practices and Prod. Liab. Litig.* 278 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) ("This district provides a convenient and accessible forum…"); *In re Farmers Ins. Co., Inc., Ins. Premiums Litig.*, 295 F. Supp. 2d 1375, 1377 (J.P.M.L. 2003) ("We are persuaded that the Western District of Oklahoma is an appropriate transferee forum for this litigation. We note that an action is pending there and that this choice provides a convenient, central forum."). Oklahoma City combines western charm with its modern metropolitan atmosphere to create an environment that is conducive to handling complex litigation.

The Western District of Oklahoma is centrally located, easily accessible to all parties, and is located in a bustling metropolitan area. Thus, the Western District of Oklahoma is the most favorable forum, in the event the Actions are not transferred to Nebraska.

---

[8]*See* Uber, Cities, https://www.uber.com/global/en/cities/oklahoma-city/?utm_campaign=CM2198659-search-bing-brand_1_-99_US-National_o-d_web_acq_cpc_en_Generic_Phrase_uber_kwd-75729274461184%3Aloc-71253__1211662316540068_e_c&utm_source=bing (last visited Sept. 22, 2022).

[9]*See* Lyft, Cities, https://www.lyft.com/rider/cities/oklahoma-city-ok?utm_medium=cpc&utm_source=bing&utm_campaign=PAID_DAX_SRCH_US_NSM_WEB_ALL_NBRND_UBER_ALL_202107 (last visited Sept. 22, 2022).

[10] *See* Oklahoma City Embark, www.embarkok.com (last visited Sept. 22, 2022) (offering transportation by bus, ferry, streetcar, bike share, and rideshare).

[11] *See* Visit Oklahoma City, Hotels, www.visitokc.com/hotels/ (last visited Sept. 22, 2022) (offering hotel selections in Downtown, Bricktown, and Near the Airport).

### 3. *Factor 4: The Western District of Oklahoma has the Expertise and Resources Necessary to Manage the Actions.*

The Panel also considers whether a potential transferee forum has the necessary resources and expertise to handle consolidated litigation when making its determination of the proper forum. *See, e.g., In re Methyl Methacrylate (MMA) Antitrust Litig.*, 435 F. Supp. 2d 1345, 1347 (J.P.M.L. 2006) (transferring to a district that "is well equipped with the resources that this complex antitrust docket is likely to require"); *In re Sulfuric Acid Antitrust Litig.*, 270 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (concluding that the transferee forum was "equipped with resources that this complex antitrust docket is likely to require"); *In re Fed. Nat. Mortgage Ass'n Sec. Derivative & "ERISA" Litig.*, 370 F. Supp. 2d 1359, 1380 (J.P.M.L. 2005) (concluding that the transferee forum "possesses the necessary resources and expertise to be able to devote the time and effort to pretrial matters that this docket is likely to require").

The Western District of Oklahoma is equipped with the experience, resources, and jurists to handle the demands of multidistrict litigation. The most recent Federal Court Management and Caseload Statistics for the Western District of Oklahoma indicate that it is not unduly congested, and that it has the capacity to handle this litigation.[12] In fact, the Western District of Oklahoma does not currently have any active MDL proceedings, allowing the case the time and attention it requires.[13] This Panel has also found the Western District of Oklahoma has the resources to manage complex litigation. *See In re Gen. Motors Corp. Piston Slap Prod. Liab. Litig.*, 314 F. Supp. 2d 1386, 1388 (J.P.M.L. 2004) (ordering transfer to the Western District of Oklahoma,

---

[12] *See* U.S. Judicial Panel on Multidistrict Litigation, MDL Statistics Report – Distribution of Pending MDL Dockets by District (Sept. 15, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-15-2022.pdf (last visited Sept. 22, 2022).

[13] *See Id.*

noting that it "is a district equipped with the resources that this complex docket is likely to require.").

In determining the adequacy of the expertise and resources of the forum, the Panel must also evaluate the Judges available in that forum. One of the most important considerations the Panel faces is whether the judge assigned to the case has the necessary experience and the appropriate temperament to handle a large, complex civil action. *See In re Paxil Prod. Liab. Litig.*, 296 F. Supp. 2d 1374, 1374 (J.P.M.L. 2003) (cases transferred where judge was experienced and district had capacity to handle the litigation); *In re Vision Serv. Plan Tax Litig.*, 484 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) ("[W]e are assigning this litigation to an experienced jurist with the ability to steer this litigation on a prudent course"); *In re African-Am. Slave Descendants Litig.*, 231 F. Supp. 2d 1357, 1358 (J.P.M.L. 2002) (transferee forum is proper where "the judge assigned to the action pending in this district is a seasoned jurist who can steer this litigation on a steady and expeditious course"); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 269 F. Supp. 2d 1372, 1373 (J.P.M.L. 2003) ([W]e have searched for a transferee judge with the time and experience to steer this litigation on a prudent course."). Judge DeGiusti is a highly credentialed and experienced jurist who, following a distinguished career as a trial lawyer, has served on the federal bench since 2007. Prior to serving on the bench, Judge DeGiusti was a Trial Counsel for the U.S. Army JAG Corps from 1990 to 1993 and a professor of law at the University of Oklahoma College of Law from 1998 to 2003. Judge DeGiusti also served in the Army National Guard and the Army Reserve from 1981 through 2003. Not only is Judge DeGiusti's experience on the bench exemplary, his experiences prior to taking his place as a federal judge give him a wide breadth of understanding, and these combined factors make him an ideal judge to preside over this complex litigation.

Judge DeGiusti has successfully managed other similarly complex litigations for nearly a decade. *See generally, United Food & Commer. Workers Union v. Chesapeake Energy Corp.*, No. 09-CIV-1114 (W.D. Okla.); *Courtright v. Bd. of County Comm'rs*, No. 08-CIV-230 (W.D. Okla.); *Blankenship v. Kwick Rentals*, Case No. 15-CIV-1057 (W.D. Okla.); *Guidry v. Chenega Integrated Sys., L.L.C.*, No. 07-CIV-378 (W.D. Okla.); *Northumberland Cty. Ret. Sys. Vv. GMX Res. Inc.*, No. 07-CIV-378 (W.D. Okla.); *Cooper v. Coil Chem LLC*, No. 16-CIV-473 (W.D. Okla.); *Chieftan Royalty Co. v. SM Energy Co.*, No. 11-CIV-177; *Saenz v. Erick Flowback Serv., LLC*, No. 14-CIV-593; *Reaching Souls Int'l, Inc. v. Sebelius*, No. 13-CIV-1092; *In re Samsung Top-Load Washing Mach. Mktg., Sales Practices and Prod. Liab. Litig.* MDL No. 17-ml-2792 (W.D. Okla.). This Panel has openly recognized Judge Degiusti's expertise and skill. *In re Samsung Top-Load Washing Mach. Mktg., Sales Practices and Prod. Liab. Litig.* 278 F. Supp. 3d 1376, 1378 (J.P.M.L. 2017) ("Judge Timothy D. Degiusti, to whom we assign this litigation, is an experienced jurist, and we are confident he will steer this litigation on a prudent course."). Judge DeGiusti has proven trial management skills that can be leveraged and applied here.

4. ***Factors 5 & 6: the Western District of Oklahoma's docket statistics support transfer and consolidation to this District.***

Further, the Western District of Oklahoma's favorable docket conditions warrant its selection as the transferee forum. In an MDL matter, "[t]he percentage of cases over three years old is an especially useful basis for comparing various court dockets." D. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation* § 6:17 at 210-11 (2008). The Western District of Oklahoma has only 6.0% of its civil cases pending for three years or more.[14] For comparison, the District of Nebraska has 6.2%, the Eastern District of Tennessee

---

[14] United States Courts, United States District Courts – National Judicial Caseload Profile (June 30, 2022), https://www.uscourts.gov/file/45245/download (last visited Sept. 22, 2022).

has 8.2%, and the Central District of California has 9.2% of cases pending for three years or more.[15] Of all the forums mentioned, the Western District of Oklahoma has the smallest percentage of cases pending for three years or more. Due to the Western District of Oklahoma's small percentage of cases pending for three years or more, the Western District of Oklahoma is ranked nineteenth out of ninety-four judicial districts in this category, which surpasses Tennessee, California, and even Nebraska. The Western District of Oklahoma is also ranked eighth out of ninety-four districts in the United States in median time from case filing to civil trial, meaning it is one of the most expeditious forums for managing pretrial proceedings.[16]

The Western District of Oklahoma is the least busy docket when compared to the Eastern District of Tennessee and the Central District of California. The Western District of Oklahoma has had the fewest new case filings from June 30, 2017, through June 30, 2022, with only 11,343 filings.[17] The Eastern District of Tennessee has had 12,168 filings and the Central District of California has had an outstanding number of 102,324 filings during the same timeframe.[18] These statistics demonstrate the Western District of Oklahoma's ability to resolve this case in a timely and efficient fashion. Therefore, the Western District of Oklahoma is optimally situated, experienced, and capable of effectively managing a complex litigation like the proposed MDL. The Western District of Oklahoma has the resources and capacity to properly oversee this litigation, should the Panel decide Nebraska is not an appropriate forum.

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

### III.   <u>CONCLUSION</u>

For all the foregoing reason, Plaintiffs respectfully request an Order granting Transfer and Consolidation to the Honorable Judge John M. Gerrard in the District of Nebraska pursuant to 28 U.S.C. § 1407, or in the alternative, that the Actions be transferred to Chief Judge Timothy D. Degiusti in the Western District of Oklahoma.

Respectfully Submitted,

Dated: September 29, 2022

/s/ William B. Federman
William B. Federman (*admitted pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
*Attorney for Plaintiffs Jennifer Hegarty, Mia Sayers, and Kylee Williams*

**<u>PROOF OF SERVICE</u>**

In compliance with the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that the foregoing document was electronically filed with the Court of the Judicial Panel on Multidistrict Litigation using the CM/ECF system and was electronically served on all on counsel via the CM/ECF system.

Dated: September 29, 2022

<div style="margin-left: 40%;">

*/s/ William B. Federman*

William B. Federman

</div>