**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| In re:<br><br>**NELNET SERVICING, LLC<br>DATA SECURITY LITIGATION** | **MDL Docket No. 3053** |

**INTERESTED PARTY RESPONSE OF
PLAINTIFF FRANCINE SIMMONS IN SUPPORT OF
TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407**

Plaintiff Francine Simmons ("Plaintiff"), the named plaintiff in *Francine Simmons v. Nelnet Servicing, LLC*, No. 4:22-cv-03194 (D. Neb.) ("*Simmons*"), submits this interested party response to the pending *Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407* ("Motion").

Movant-Plaintiffs William Spearman, *et al.* (the "*Spearman* Plaintiffs"), and Pamela Bump, *et al.* (the "*Bump* Plaintiffs") (collectively the "Movants"), seek the transfer or consolidation of the related actions ("Related Actions") to the U.S. District Court for the District of Nebraska. *See* ECF No. 1-1 and its attached Schedule of Actions. Eighteen of the pending twenty actions are already pending in the United States District Court for the District of Nebraska, including the first filed action. The Nebraska actions are each assigned to the Honorable Judge John M. Gerrard for disposition and to Magistrate Judge Cheryl R. Zwart for judicial supervision.

Plaintiff Simmons supports the transfer and coordination or consolidation of the Related Actions for pretrial proceedings for the convenience of the courts, witnesses, parties, and counsel, and further agrees with the Movants that the District of Nebraska would offer substantial efficiencies for this litigation.

I.      **BACKGROUND**

Defendant Nelnet works with the U.S. Department of Education and other lenders to provide customer service on federal student loans, answering questions, assisting with deferments, and processing payments. Although Nelnet owns some of the loans it services, it also provides customer service and web-support for other lenders' loans, including but not limited to loans from the Department of Education and EdFinancial. Nelnet provides application processing, underwriting, fund disbursement, payment processing, default aversion, and other services for its student loan portfolio and the student loan portfolios of its direct clients, including the Department of Education.

Nelnet Servicing, LLC is a Nebraska limited liability company with its principal place of business in Lincoln, Nebraska. Nelnet Servicing, LLC is a wholly-owned subsidiary of Nelnet Diversified Solutions LLC, also a Lincoln, Nebraska based limited liability company, which is itself a wholly-owned subsidiary of Nelnet Inc., a Lincoln, Nebraska based corporate conglomerate that serves as an administrator for the repayment of student loans and provides other education financial services.

According to its Notice Letters to Class Members, on July 21, 2022, Nelnet detected that unauthorized cybercriminals gained access to its information system and network. Over a month later, on or about August 26, 2022, Nelnet began notifying State Attorneys General about its widespread data breach. As Nelnet explained to the Attorneys General, its Data Breach involved the sensitive PII of 2,501,324 individuals.

Nelnet's Notice Letters admit that the Data Breach began on an undisclosed date in June 2022 and continued until July 22, 2022. Despite learning about the Data Breach in July 2022, when cyber criminals had already accessed the PII of Plaintiff and Class for a month or more, Nelnet chose not to notify affected Class Members for more than a month. Plaintiff's and Class Members' PII was in the hands of cybercriminals for about two months before they were notified of Nelnet's

Data Breach. Time is of the essence when trying to mitigate against identity theft after a data breach, so the earliest possible notification is critical, especially where highly sensitive PII like Social Security numbers paired with dates of birth are involved. Nelnet had and breached its obligations created by contract, industry standards, and common law to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure. Nelnet failed to meet these obligations.

After receiving notices about Nelnet's data breach, its affected borrowers began filing class action lawsuits, including each of the Related Actions. Since the Data Breach was announced on August 26, 2022, approximately twenty (20) putative class action lawsuits against Nelnet have been filed in the U.S. District Courts. Only one lawsuit names Edfinancial Services, LLC as a co-defendant. *See Kohrell v. Nelnet Servicing, LLC and Edfinancial Servs., LLC*, No 3:22-cv-00314 (E.D. Tenn.).

All Related Actions assert that Nelnet knew or should have known that by obtaining, collecting, and using borrowers' PII for its own financial gain and business purposes, it assumed legal and equitable duties and knew that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure. Yet Nelnet failed to take appropriate steps to protect the PII of Plaintiff and the proposed Class(es) from being compromised. In each Related Action, plaintiffs allege (with slightly different details and legal claims) that Nelnet's conduct was negligent, unjust, constituted the breach of an implied contract, violated various consumer protection statutes, and/or violated common law principles. Centralization in a single federal court will hasten and facilitate a comprehensive remedy for individuals affected by the Data Breach. The similarity of the Related Actions makes centralization appropriate, and the best forum for these actions is in the District of Nebraska, where almost all are already pending.

## II.    ARGUMENT

**A.      Consolidation under 28 U.S.C. § 1407 is necessary.**

Plaintiff Simmons agrees with Movants that the Related Actions involve "common questions of fact", and transfer will "further the convenience of the parties and witnesses" while "promot[ing] the just and efficient conduct of such actions." 28 U.S.C. § 1407. The Panel should consider the following three factors when determining whether to authorize transfer and consolidation of multidistrict actions: (1) one or more common questions of fact are pending in different districts; (2) a transfer would serve the convenience of parties and witnesses; and (3) a transfer would promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a); *see also; In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Pracs. Litig.*, 232 F. Supp. 3d 1344, 1345 (J.P.M.L. 2016); *In re Hill's Pet Nutrition, Inc., Dog Food Prods. Liab. Litig.*, 382 F. Supp. 3d 1350, 1351 (J.P.M.L. 2019) ("Centralization will eliminate duplicative discovery, the possibility of inconsistent rulings on class certification, Daubert motions, and other pretrial matters, and conserve judicial and party resources."); *In re SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 3021, 2022 WL 303561, at *1 (J.P.M.L. Feb. 2, 2022) (same).

To-date, twenty putative class actions have been filed in just three federal district courts: eighteen (18) in the District of Nebraska, one (1) in the Eastern District of Tennessee, and one (1) in the Central District of California. No Related Actions are pending in any state court. Each Related Action involves identical factual questions regarding Defendants' conduct, corporate decision-making, actions taken or not taken, and overlapping issues concerning plaintiffs' damages. And although the loans may have been serviced at different locations and for different lenders, the Related Actions each involve common questions about the security practices and decisions of Nelnet. *E.g.*, *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 109 F. Supp. 3d 1382, 1383 (J.P.M.L. 2015) ("All actions

involve common factual questions regarding whether [the corporation] falsely represented [its products]").

Centralization of these matters through transfer to a common district and coordination or consolidation for pretrial litigation is necessary to minimize duplicative discovery and depositions, eliminate the possibility of inconsistent rulings on class certification, Daubert motions, and other pretrial issues, and to conserve judicial and party resources. *Id.* This matter is the quintessential type of case that would benefit from consolidation, leaving only the question of which district is the most appropriate selection for that consolidation.

**B.    The District of Nebraska is by far the most efficient district for the coordination or consolidation of the Related Actions.**

The U.S. District Court for the District of Nebraska is the most logical and efficient forum for litigating the Related Actions. Eighteen of the twenty Related Actions are already pending there. Multiple factors the Panel considers weigh in favor of transfer to the District of Nebraska, including: 1) the convenience of the parties; 2) the proposed district eliminates or reduces jurisdictional issues; 3) the proposed district is centrally located and easily accessible for benefit of the parties; and 4) litigation of multiple defendants in a single MDL is warranted where there is significant factual, party, and claims overlap. *See, e.g., In re Wheat Farmers Antitrust Class Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L. 1973); *In re Preferential Drug Prods. Pricing Antitrust Litig.*, 429 F. Supp. 1027, 1029 (J.P.M.L. 1977); *In re Tri-State Crematory Litig.*, 206 F. Supp. 2d 1376, 1378 (J.P.M.L. 2002); *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 293 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003); *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litig.*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L. 2004).

*1.    The location of Nelnet's corporate headquarters weighs heavily in favor of the District of Nebraska.*

This Panel has repeatedly—and long—acknowledged the value of consolidating related actions in or near the district of a corporation's headquarters. For example, in *In re Hill's Pet Nutrition, Inc.*, the decision to transfer the pending matters to the District of Kansas relied heavily on the location of Hill's headquarters and its accessibility to key evidence and corporate witnesses. 382 F. Supp. 3d at 1351 ("Hill's is headquartered in [transferee] district, and it represents that its key evidence and witnesses are located there."); *see, also, In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1355 (J.P.M.L. 2016) ("corporate headquarters is located within the district, and therefore relevant documents and witnesses are likely to be located there."). Other recent MDLs have also been transferred to locations near corporate headquarters, although (at times) parties have suggested other districts. *See, e.g., In re Union Pac. R.R. Co. Emp. Pracs. Litig.*, 314 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) (transferring to the District of Nebraska since "documents and witnesses can be found at [defendant]'s Nebraska headquarters" and "the Nebraska district has the capacity to handle this litigation."); *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 249 F. Supp. 3d 1357, 1361 (J.P.M.L. 2017) (transferred near corporate headquarters); *In re Eliquis (Apixaban) Prods. Liab. Litig.*, 282 F. Supp. 3d 1354, 1356 (J.P.M.L. 2017) (same); *In re: Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 84 F. Supp. 3d 1383, 1384 (J.P.M.L. 2015) (same). Moreover, MDL transfers to locations near corporate headquarters has been a common practice of this Panel for almost 50 years. *See, e.g., In re Amerada Hess Corp. Antitrust Litig.*, 395 F. Supp. 1404, 1405 (J.P.M.L. 1975) ("corporate headquarters is in the New York area, the bulk of the discovery sought of it will occur there"); *In re U.S. Fin. Sec. Litig.*, 375 F. Supp. 1403, 1404 (J.P.M.L. 1974) (same).

As was true in *In re Hill's Pet Nutrition, Inc.* and *In re Yahoo! Inc.* and other matters transferred near corporate headquarters by this Panel, many or most of the decision-making corporate witnesses and relevant documents can be found in the District of Nebraska, rather than

the location of Nelnet's various lender-clients. Thus, the District of Nebraska is the most efficient forum for litigating this matter.

### 2. *Transfer to the District of Nebraska eliminates jurisdictional questions.*

A second factor supporting transfer of the Related Actions to the District of Nebraska is that their consolidation in that district eliminates any questions of whether the jurisdiction is proper. Jurisdictional issues can haunt class action cases for years when multi-state matters are brought in districts and states other than that of the company's headquarters.

A company's headquarters for the purpose of federal diversity is sometimes called the corporation's "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) ("[W]e conclude that the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities."). In its Annual Report, Nelnet states that it is a Nebraska corporation and lists the location of its "principal executive offices" as 121 South 13th Street, Suite 100, Lincoln, Nebraska. *E.g.*, Annual Report at 1. The Annual Report also states it was founded in Nebraska in 1978 (*id.* at 4), that its real estate investments are located "in the Midwest, and particularly in Lincoln, Nebraska." *Id.* at 14.

Any or all of the Related Actions could have been filed in the District of Nebraska as that district has personal and subject matter jurisdiction over Nelnet, the common defendant in every Related Action.

### 3. *Lincoln is centrally-located and easily-accessible, in close proximity to its own transportation resources as well as those in Omaha, Nebraska.*

This Panel has previously favored centrally located forums for multidistrict litigation. *See In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 65 F. Supp. 3d 1402, 1405 (J.P.M.L. 2014) (ordering transfer to the Eastern District of Louisiana because it "provides a geographically central forum for this nationwide litigation."). In addition to being the location of Nelnet's headquarters, Lincoln, Nebraska is near the geographic center of the contiguous United States (which is literally

located in Smith County, Kansas, near the Nebraska/Kansas border). As the plaintiffs in the Related Actions are spread out across the United States, the location of the District of Nebraska in the country's geographic center is a benefit to all parties and witnesses on both sides.

Regardless of where the Related Actions are transferred, some of the parties and witnesses will be required to travel, such that the accessibility of the metropolitan area can and should be a significant consideration for this Panel's decision when selecting an appropriate forum. *See In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376–77 (J.P.M.L. 2002) (transferring litigation to a district court "in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services."); *In re Laughlin Prods., Inc. Patent Litig.*, 240 F. Supp. 2d 1358, 1359 (J.P.M.L. 2003) (transferring to "an accessible metropolitan district").

In addition to the transportation resources of Lincoln, Nebraska (where eighteen of the twenty Related Actions are already pending), Lincoln is just a one-hour drive to Omaha's airport. Virtually every major U.S. airline serves either Lincoln's own airport (served by United Airlines) or Omaha's airport (served by Alaska, Allegiant, American, Delta, Frontier, Southwest, and United Airlines).

### 4. *Creation of a single MDL with more than one defendant is warranted where significant overlap in factual issues, parties, and claims exists.*

One of the two Related Actions was brought against two defendants, Nelnet and EdFinancial, one of several lenders for which Nelnet provides loan servicing and which is headquartered in Knoxville, Tennessee. Although in many situations, this Panel is reluctant to bring together Related Actions, where "there is significant overlap in the central factual issues, parties, and claims, [the Panel should find] that creation of a single MDL is warranted." *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 201 F. Supp. 3d 1375, 1378 (J.P.M.L. 2016).

Moreover, third-party discovery that might be anticipated would be related to the network security and the breach itself is likely to be identical for each defendant. *Id.*

In this matter, virtually all of the Related Cases involved the exfiltration of the personally identifiable information (PII) of student loan borrowers during the same Data Breach of Nelnet's computer network. Like the *In re 100% Grated Parmesan Cheese* centralization of multiple defendants, the District of Nebraska provides a convenient and accessible forum despite the inclusion of an additional defendant, EdFinancial. The great majority of the Related Actions are pending in Nebraska; Nelnet's headquarters is located in that district; and upon information and belief, the majority of the documents and witnesses related to the Data Breach are located there. *Id.* at 1378–79. The District of Nebraska, located in the geographic center of the contiguous United States, is relatively close to co-defendant EdFinancial, which has its headquarters in Tennessee. And the claims against Nelnet and EdFinancial (or any other student loan lender who may be later included as a defendant in this litigation) are virtually identical to the claims brought against Nelnet. *Id.* This factor also supports the coordination and consolidation of the Related Actions in the District of Nebraska for all pretrial proceedings.

## III.   CONCLUSION

For the reasons stated herein, Plaintiff Simmons supports the transfer and coordination or consolidation of the Related Actions for all pretrial proceedings to the District of Nebraska.

Respectfully submitted this the 4th day of October 2022.

*/s/ Gary E. Mason*
Gary E. Mason
**MASON LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Tel: (202) 429-2290
Fax: (202) 429-2294

Email: gmason@masonllp.com

*Attorneys for Plaintiff and the proposed*
*Classes in Simmons v. Nelnet Servicing, LLC*