**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| **IN RE:NELNET SERVICING, LLC DATA SECURITY LITIGATION** . | MDL No. 3053 |

**INTERESTED PARTY RESPONSE OF PLAINTIFF KOHRELL TO MOTION FOR TRANSFER OF ACTIONS TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA AND FOR <u>CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407</u>**

## I.    INTRODUCTION

In accordance with 28 U.S.C. § 1407, Plaintiff Garner Kohrell ("Plaintiff Kohrell"), the named plaintiff in *Garner J. Kohrell v. Nelnet Servicing, LLC, et al.*, No. 3:22-cv-00314 (E.D. Tenn.), respectfully submits this interested party response to the Motion for Transfer of Actions to the United States District Court for the District of Nebraska and for Consolidation Pursuant to 28 U.S.C § 1407 (the "Motion") filed by Plaintiffs William Spearman, Brittni Linn, Jessica Alexander, Christopher Sangmeister, Taylor Vetter, Nichole Allocca, Kayli Lazard, and Bridget Cahill ("*Spearman* Plaintiffs"), and Pamela Bump, Melissa Charbonneau, Douglas Conley, Noah Helvey, Dallin Iler, Dustin Jones, Devinne Peterson, Justin Randall, Sofia Rodriguez, and Rachel Woods (the *Bump* Plaintiffs") (collectively, the "Movants") (ECF No. 1).

Based on this Court's past jurisprudence, Plaintiff Kohrell respectfully submits that centralization is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of this litigation, and the Movants' Motion should be denied. Should the Panel determine that centralization is appropriate, Plaintiff Kohrell respectfully submits that the Eastern District of Tennessee, where one of the two principal defendants is headquartered, is the most appropriate transferee district for this litigation.

## II.    BACKGROUND

As of the date of this response, approximately 22 putative class action lawsuits have been filed on behalf of student loan customers alleging negligence and other violations arising out of the data breach announced by Nelnet Servicing, LLC ("Nelnet") on August 26, 2022 (the "Data Breach"). According to public statements made by Nelnet, at least 2.5

million current and former student loan borrowers whose loans were serviced by Nelnet, Edfinancial Services, LLC ("Edfinancial") and the Oklahoma Student Loan Authority ("OSLA") were notified that their names, addresses, email addresses, phone numbers, and Social Security Numbers ("PII") was compromised in the Data Breach. The cases are pending in the District of Nebraska, the Eastern District of Tennessee, the Central District of California, the Northern District of Illinois, and the Middle District of Florida (collectively, the "Related Actions"). The Related Actions share common questions of fact and law, and all arise out of allegations that the Data Breach exposed the PII of at least 2.5 million customers.

Eighteen of the Related Actions are currently pending in the District of Nebraska, and are listed in order of filing date:

- *Herrick v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03181 (D. Neb. Aug, 30, 2022) (Gerrard, J.);

- *Carlson v. Nelnet Servicing, LLC*, Case No. 2022-cv-03184 (D. Neb. Aug, 31, 2022) (Gerrard, J.);

- *Ballard v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03185 (D. Neb. Sept. 1, 2022) (Gerrard, J.);

- *Hegarty v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03186 (D. Neb. Sept. 2, 2022) (Gerrard, J.);

- *Beasley v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03187 (D. Neb. Sept. 2, 2022) (Gerrard, J.);

- *Varlotta v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03188 (D. Neb. Sept. 2, 2022) (Gerrard, J.);

- *Hollenkamp v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03189 (D. Neb. Sept. 6, 2022) (Gerrard, J.);

3

- *Spearman et al v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03191 (D. Neb. Sept. 7, 2022) (Gerrard, J.);

- *Miller v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03193 (D. Neb. Sept. 8, 2022) (Gerrard, J.);

- *Simmons v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03194 (D. Neb. Sept. 8, 2022) (Gerrard, J.);

- *Bird v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03195 (D. Neb. Sept. 9, 2022) (Gerrard, J.);

- *Joaquin-Torres v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03196 (D. Neb. Sept. 9, 2022) (Gerrard, J.);

- *Freeman et al v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03197 (D. Neb. Sept. 12, 2022) (Gerrard, J.);

- *Sayers et al v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03203 (D. Neb. Sept. 14, 2022) (Gerrard, J.);

- *Bump et al v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03204 (D. Neb. Sept. 14, 2022) (Gerrard, J.);

- *Cordaro v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03207 (D. Neb. Sept. 15, 2022) (Gerrard, J.);

- *Gamen v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03209 (D. Neb. Sept. 16, 2022) (Gerrard, J.);

- *Freeland v. Nelnet Servicing, LLC*, Case No. 4:2022-cv-03211 (D. Neb. Sept. 19, 2022) (Gerrard, J.).

All of the Related Actions in the District of Nebraska allege claims only against Nelnet and have been deemed related and assigned to a single judge, Judge John M. Gerrard, for disposition. One Related Action is currently pending in the Central District of California:

- *Kitzler v. Nelnet Servicing, LLC et al.*, Case No. 2:2022-cv-06550 (C.D. Cal. Sept. 13, 2022) (Fitzgerald, J.).

4890-9322-0149, v. 6

*Kitzler* alleges claims against Nelnet and against "Does, 1-10, inclusive." One Related

Action, Plaintiff Kohrell's, is currently pending in the Eastern District of Tennessee:

- *Kohrell v. Nelnet Servicing, LLC et al.*, Case No. 3:2022-cv-00314 (E.D. Tenn. Sept. 8, 2022) (Varlan, J.).

Plaintiff Kohrell's action alleges claims against Edfinancial, from whom he received notice

of the Data Breach, as well as against Nelnet. One Related Action is now pending in the

Northern District of Illinois, after having been removed from Illinois state court:

- *Quinn v. Edfinancial Services, LLC et al.*, Case No. 1:22-cv-05467 (N.D. Ill. Oct. 5, 2022) (Shah, J.).

Plaintiff Quinn's action alleges claims against Nelnet and Edfinancial. And finally, one

Related Action is now pending in the Middle District of Florida, after having been

removed from Florida state court:

- *Eichenblatt v. Nelnet Servicing, LLC et al.*, Case No. 6:2022-cv-01794 (M.D. Fla. Oct. 3, 2022) (Mendoza, J.).

Plaintiff Eichenblatt's action alleges claims only against Nelnet.

## III.   ARGUMENT

### A. The Litigation Fails to Satisfy the Requirements for Consolidation and Transfer under 28 U.S.C. § 1407.

28 U.S.C. §1407(a) provides in relevant part:

When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

In considering whether transfer is warranted, the Panel has "emphasized that 'centralization under Section 1407 should be the last solution after considered review of all other options.'" *In re Kronos Customer Data Sec. Breach Litig.*, MDL 3039, 2022 WL 3138680, at *1 (J.P.M.L. Aug. 3, 2022) (quoting *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)). The "proponents of centralization have [the] burden of demonstrating the need for centralization," a burden which gets heavier when a minimal number of actions are involved. *Best Buy*, 804 F. Supp. 2d at 1379 (citing *In re Transocean Ltd. Sec. Litig.,* 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010) ("As we have stated in the past, where only a minimal number of actions are involved, the moving party generally bears a heavier burden of demonstrating the need for centralization.")). Parties are directed to consider "voluntary cooperation and coordination among the parties and the involved courts to avoid duplicative discovery or inconsistent rulings," including "informal coordination." *Kronos*, 2022 WL 3138680, at *1 (citing *In re Gerber Probiotic Prods. Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978); Manual for Complex Litigation, Fourth, § 20.14 (2004)).

Here, "centralization is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of this litigation." *Kronos*, 2022 WL 3138680, at *1. First, the Related Actions are pending in only a few jurisdictions, and while there are 18 cases pending in the District of Nebraska, they are all already related and pending in front of a single judge. There is also substantial overlap in counsel, which supports a denial of transfer. *See* ECF No. 4-2 (listing multiple filings for several counsel);

*In re Atrium Med. Corp. ProLite & ProLoop Hernia Mesh Prod. Liab. Litig.*, MDL 3024, 2022 WL 1053651, at *2 (J.P.M.L. Apr. 5, 2022); *see also Kronos*, 2022 WL 3138680, at *1. The small number of jurisdictions and informal coordination and relation already accomplished also counsels against centralization. *Id.*

Second, while there are undoubtedly commonalities among the actions, as they arise from the same Data Breach, they are not identical, and the Related Actions outside of the District of Nebraska allege claims against additional parties not named in the Related Actions. Plaintiff Kohrell's action, for example, alleges claims against his student loan servicer, Edfinancial, which will involve factual issues specific to Edfinancial and its role in the Data Breach. *See* ECF No. 1-19 at 6-8 (*Kohrell* complaint). Edfinancial's website privacy policy also contains a forum selection clause that requires all actions be filed in state or federal court located in Knox County, Tennessee, where the Eastern District of Tennessee sits. *See id.* at 6 & n.6. Given the "relatively small number of actions, the addition of such individualized facts and unique additional defendants would complicate the management of a coordinated proceeding." *Kronos*, 2022 WL 3138680, at *2. Any potentially duplicative discovery can be managed through informal coordination. *Accord In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1376 (J.P.M.L. 2017) (excluding case with forum selection clause from MDL transfer when coordination of common discovery was feasible and would promote more orderly litigation).[1]

---

[1] As noted above, there is one additional action that names Edfinancial as a defendant. Unless Edfinancial is willing to waive the forum selection clause, it may make sense to do a § 1404(a) transfer to Tennessee for that action and consolidate it with Plaintiff Kohrell's

In addition, Plaintiff Kohrell is the party that "would be most affected by centralization" and does "not believe that centralization would be beneficial," which counsels against transfer." *In re Student–Athlete Name & Likeness Litig.*, 763 F. Supp. 2d 1379 (J.P.M.L. 2011); *see also In re Sorin 3T Heater-Cooler Sys. Prods. Liab. Litig.*, 273 F. Supp. 3d 1357, 1358 (J.P.M.L. 2017). Plaintiff Kohrell's action names an additional defendant, may be governed by a forum selection clause, and was not filed in the jurisdiction or by the counsel who seek centralization. It is notable that neither the Movants nor any party that has filed a response in support of transfer has attempted to grapple with the effect of centralization on Plaintiff Kohrell's action or the Panel's rulings on centralization as a last resort, and instead each merely repeats boilerplate claims in favor of centralization or skip argument to meet the burden entirely. *See* ECF No. 1-1 at 14-16 (not mentioning *Kohrell* or informal coordination possibilities); ECF No. 21 at 4 ("A detailed recitation of the well-known standard is not necessary[.]"); ECF No. 30 at 4-5 (not mentioning informal coordinating possibilities).

Movants note that Nelnet will likely file the same kinds of motions in all of the Related Actions and raise the same legal arguments in each. But the Panel has held that legal efficiencies are not sufficient to warrant centralization. *See In re Supplemental Nutrition Assistance Program Litig.*, MDL 3041, 2022 WL 3134129, at *1 (J.P.M.L. Aug. 2, 2022) ("Although movant seeks efficiencies through centralized treatment of these legal questions, '[m]erely to avoid two federal courts having to decide the same issue is, by itself,

---

case. Plaintiff Kohrell is willing to explore that possibility of informal coordination and transfer with counsel in the *Quinn* case.

4890-9322-0149, v. 6

usually not sufficient to justify Section 1407 centralization.'" (quoting *In re Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378, 1378 (J.P.M.L. 2009)).

Taken together, Movants simply have not met their burden to justify centralization of the Related Actions, and the Panel should deny the Motion.

### B. Should the Panel Decide Centralization is Appropriate for the Related Actions, the Eastern District of Tennessee is the Appropriate Transferee Forum.

Under Section 1407(a), the Panel may transfer actions to "any district" and has wide discretion to choose the transferee court. *See, e.g.*, *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 439 (S.D.N.Y. 2007); Alba Conte & Herbert Newberg, Newberg on Class Actions, § 9:16 (4th ed.). When determining the most appropriate forum the Panel considers, among other things: (1) the procedural advancement of an action; (2) the familiarity of a judge with the proceedings; (3) the efficiency of a court's civil docket; and (4) a central location for national litigation. *See id.* The final factor includes consideration of the location of parties, witnesses and documents. *In re Am. Cont'l Corp./Lincoln Savings & Loan Securities Litig.*, 581 F. Supp. 739, 741 (J.P.M.L. 1990). According to the Manual for Complex litigation, "[t]he Panel uses no single factor to select the transferee district," but *may* consider both the factors outlined above and also "where the largest number of cases is pending, where discovery has occurred, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." Manual for Complex Litigation, § 20.131. Here, the factors, taken together, favor transfer to the Eastern District of Tennessee rather than the District of Nebraska, as

suggested by Movants, or the Western District of Oklahoma, as suggested as an alternative by Plaintiffs Jennifer Hegarty, Mia Sayers and Kylee Williams (the "Hegarty Plaintiffs"). ECF No. 21.

### 1. The Procedural Advancement of the Actions

When determining an appropriate transferee forum, the Panel considers the procedural advancement of the cases filed. In the current matter, all actions were filed days apart with there being less than three weeks between when the first and last action were filed, and none have procedurally advanced beyond service. The actions in the District of Nebraska have been deemed related and assigned to the same judge, but no further advancement has occurred. No discovery has commenced in any of the Related Actions. Thus, this factor favors no particular judicial district.

### 2. Familiarity of the Judges with the Proceedings

The Panel has determined that it is best to focus on the "transferee judge with the time and experience to steer this litigation on a prudent course and sitting in a district with the capacity to handle this litigation." *In re Motor Fuel Temperature Sales Practice Litig.*, 493 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007). Neither Judge Thomas Varlan of the Eastern District of Tennessee nor Judge John Gerrard of the District of Nebraska have particular familiarity with the proceedings; Judge DeGiusti of the Western District of Oklahoma, suggested by the Hegarty Plaintiffs, has no familiarity with the litigation at all. All of the judges are esteemed jurists ably capable of fairly and efficiently steering the litigation. Judge Varlan's 19 years of experience on the federal bench, including 7 years as Chief Judge of the Eastern District of Tennessee, however, have afforded him particular

experience to handle this litigation. Prior to his appointment to the federal bench, Judge Varlan was a partner in the Knoxville office of Bass, Berry & Sims, where his practice area included government relations, general civil and business litigation, employment law, and risk management for public and private corporations. Before joining Bass, Berry & Sims, Judge Varlan served for ten years as the Law Director for the City of Knoxville and was also in private practice before that in Atlanta, GA.[2] Judge Varlan has experience both as a litigator and an able jurist in all types of complex litigation.

In addition, Judge Gerrard has expressed interest in taking senior status in February 2023,[3] which may leave his seat on the district court bench vacant, and his caseload reduced, and may affect the ability of the District of Nebraska to oversee the litigation efficiently. The reduction in Judge Gerrard's caseload could also present complications for the Panel in having to appoint another judicial officer to preside over this matter and enter the litigation after substantial work has already taken place. This may also result in a delay of the litigation and require a second judicial officer having to become familiar with this proceeding. Judge Varlan faces no such complications. As a result, this factor favors transfer of these proceedings to the Eastern District of Tennessee.

---

[2] *See* Christian Legal Society Biography, https://www.clsnet.org/document.doc?id=1056, last accessed Oct. 4, 2022.
[3] *See* United States Courts – Judges & Judgeships, *available at* https://www.uscourts.gov/judges-judgeships/judicial-vacancies/future-judicial-vacancies (last updated September 29, 2022).

11

### 3. <u>The Efficiency of the Court's Civil Dockets</u>

The Panel also considers the efficiency of a court's civil docket in determining the appropriate forum for adjudication of multidistrict litigation. Currently, neither Judge Varlan nor Judge Gerrard has any pending multidistrict litigation assignments, and Judge DeGiusti does not either.[4] *See In re: Prods Mktg. & Sales Practices Litig.,* 949 F. Supp. 2d 1365, 1366 (J.P.M.L. 2013) (assigning the litigation to an experienced and capable judge who has not yet presided over an MDL).

The Eastern District of Tennessee has 424 pending cases and 413 weighted filings per judgeship, compared to the District of Nebraska which has 461 pending cases, and 483 weighted filings per judgeship.[5] The Western District of Oklahoma has 292 pending cases and 296 weighted filings per judgeship.[6] None of the jurisdictions has anywhere near the highest number of pending cases in their respective circuits (the highest in the 6th Circuit is the Southern District of Ohio, with 2,654; the highest in the 8th Circuit is Minnesota with 1,150; the highest in the 10th Circuit is the Eastern District of Oklahoma with 636; the Northern District of Florida has the absolute highest number of pending cases per judgeship with 65,028). This factor favors, if anything, the Eastern District of Tennessee as the transferee forum.

---

[4] *See* MDL Statistics Report – Distribution of Pending MDL dockets, *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_MDL_Type-September-15-2022.pdf (September 29, 2022). Despite Movants' contention, as of September 29, 2022, the Eastern District of Tennessee does not have any pending MDLs.

[5] *See* U.S. District Courts- Combined Civil and Criminal Federal Court Management Statistics (June 30, 2022), *available at* https://www.uscourts.gov/sites/default/files/fcms_na_distcomparison0630.2022_0.pdf.

[6] *Id.*

12

**4.   A Central Location That Is Convenient for Parties, Witnesses and Documents**

An important consideration in assessing convenience is the location of the parties and the likely sources of evidence, including witnesses and documents. *See In re Canon U.S.A., Inc., Dig. Cameras Prods. Liab. Litig.*, 416 F. Supp. 2d 1369, 1371 (J.P.M.L. 2006) (transferring to the district containing the defendant's principal place of business as the district was likely to provide a source of relevant documents and witnesses); *In re Medtronic Inc., Implantable Defibrillators Prods. Liab. Litig.*, 408 F. Supp. 2d 1351, 1352 (J.P.M.L. 2005) (transferring to the district containing the defendant's headquarters). It is clear that evidence, witnesses and documents will be located in Knoxville as Knoxville, TN is where Defendant Edfinancial is headquartered, approximately 13 miles from the courthouse of the Eastern District of Tennessee.[7]

It is true that Nelnet is located in Lincoln, Nebraska. But Nelnet is a nationwide company with offices in 13 states and Australia, not all of which are in Nebraska.[8] And the vast majority of discovery in the litigation will take place electronically, with witnesses able to be deposed and information obtained regardless of forum.

The Greater Knoxville metropolitan area provides convenient access from a wide range of locations across the nation. Accordingly, the Eastern District of Tennessee is convenient and easily accessible to all parties and witnesses. For the parties and witnesses

---

[7] This was calculated using the following addresses: (1) Edfinancial Services, located at 120 N. Seven Oaks Drive, Knoxville, TN 37922; and (2) the United States Courthouse for the Eastern District of Tennessee, located at 800 Market Street, Suite 130, Knoxville, TN 37902.

[8] *See* Our Offices, Nelnet, https://nelnetinc.com/locations/, last accessed Oct. 4, 2022.

not within driving distance of Knoxville, the McGhee Tyson Airport ("TYS") provides nonstop service to and from 30 destinations in the U.S.[9] There are over 5000 flights arriving and departing from TYS annually.[10] Lastly, the federal courthouse is about 14 miles from TYS.[11] The convenience of the forum being in Lincoln, Nebraska is simply not the same. The Lincoln Airport ("LNK") is only serviced by United Express,[12] with a limited number of flights arriving and departing each day. And as the Hegarty Plaintiffs acknowledge, the Western District of Oklahoma, which is located in Oklahoma City, serves 21 cities via airplane and is the location of neither Defendant's headquarters. *See* ECF No. 21 at 7. The convenience of the Eastern District of Tennessee makes this forum an optimal choice as the transferee forum.

### 5. <u>Edfinancial's Privacy Policy Contains a Forum Selection Clause</u>

Finally, as noted above when discussing the propriety of transfer and centralization, Edfinancial's privacy policy contains a forum selection clause that requires any case to be brought in a state or federal court located in Knox County, Tennessee. *See* ECF No. 1-19 at 6-8. The Panel is not bound by forum selection clauses when deciding a proper venue.

---

[9] TYS Arrivals and Departures, *available at* https://flyknoxville.com/flights/#nonstop (September 30, 2022).

[10] TYS On-Time Performance Summary (Major U.S. Carriers Only) calculated from August 2021- July 2022, https://www.transtats.bts.gov/airports.asp?20=E&Nv42146=glf&Nv42146_anzr=X01A8 vyyr,%20ga:%20ZpTurr%20gB510&pn44vr4=SNPgf (September 28, 2022).

[11] This was calculated using the following addresses: (1) The United States Courthouse for the Eastern District of Tennessee, located at 800 Market Street, Suite 130, Knoxville, TN 37902; and (2) McGhee Tyson Airport, 2055 Alcoa Highway, Alcoa, TN 37701.

[12] *See* Frequently Asked Questions, https://lincolnairport.com/visitor-information/frequently-asked-questions/. United Express is the regional partner of United Airlines.

14

*See In re: Park West Galleries, Inc. Mktg. and Sales Practices Litig.*, 655 F. Supp. 2d 1378, 1379 (J.P.M.L.2009) (when civil actions satisfy the criteria set forth in 1407(a), the statute authorizes the Panel to centralize those actions . . . in "any district"). But Plaintiff Kohrell believes the forum selection clause in Edfinancial's privacy policy is further support for the conclusion that the Eastern District of Tennessee is the best forum for this litigation because it resolves any personal jurisdiction concerns regarding Edfinancial, and because Edfinancial has not waived the forum selection clause so as to allow litigation against it to proceed in the District of Nebraska (or any other forum).

The presence of a forum selection clause also supports the Panel's oft-stated emphasis that "centralization under Section 1407 should be the last solution after considered review of all other options." *Best Buy*, 804 F. Supp. 2d at 1378. Here, should the Panel decide that transfer as means of last solution justifies granting Movants' Motion, the Panel should transfer the proceedings to the Eastern District of Tennessee.

### IV.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that this Panel deny Movants' request to centralize and transfer all pending Related Actions, as well as any subsequently filed or removed tag along actions to the United States District Court for the District of Nebraska, because Movants have not met their burden to justify centralization. Should the Panel decide that centralization is appropriate, Plaintiff Kohrell requests that the actions instead be centralized and transferred to the Eastern District of Tennessee.

4890-9322-0149, v. 6

Dated October 7, 2022                    Respectfully submitted,


                                         */s/ Kate M. Baxter-Kauf*
                                         Kate M. Baxter-Kauf (MN #0392037)
                                         **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
                                         100 Washington Avenue South, Suite 2200
                                         Minneapolis, MN 55401
                                         Telephone: (612) 339-6900
                                         Facsimile: (612) 339-0981
                                         kmbaxter-kauf@locklaw.com
                                         *Attorneys for Plaintiff Kohrell*

4890-9322-0149, v. 6